IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILO USA, LLC, a Delaware limited liability corporation, | No. 13 C 4041 |
| Plaintiff, | Judge Robert M. Dow. Jr. |
| vs. | Magistrate Judge Arlander Keys |
| RST THERMAL, INC., a Massachusetts corporation, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Wilo USA, LLC, ("Wilo"), filed suit against Defendant, RST Thermal, Inc., ("RST"), to collect $61,037.49, plus servicing charges and attorneys' fees, for goods accepted by RST, but for which Wilo alleges RST has not remitted payment. RST filed a counterclaim pursuant to the Massachusetts unfair trade practices act, Mass. Gen. Law, ch. 93A, §11 ("Chapter 93A"), and the Delaware Deceptive Trade Practices Act, Delaware Code §2531,*et.seq*. ("Delaware Act"), for $90,000 in damages. Currently pending before the Court is Wilo's motion to strike Defendant's counterclaim. For the reasons set forth below, Wilo's motion to strike is granted.

Background

Wilo, a Delaware corporation with its principal place of business in Rosemont, Illinois, manufactures and supplies water

pumps and circulators for residential and commercial use.  RST, a Massachusetts corporation with its principal office located in Westwood, Massachusetts, is a representative for various manufacturers of heating and cooling products.

On or about February 1, 2009, Wilo and RST executed the "Wilo USA LLC HVAC Manufacturer's Representative Agreement" ("Agreement").  *(Doc. No. 1-1, Pl.'s Ex. A.)*  The Agreement provided that RST may serve as Wilo's representative in certain areas of the U.S., solicit orders from customers, and receive commissions for its services.  Additionally, the Agreement provided that it may be terminated by either party without cause at any time with 30 days written notice.  Pursuant to the Agreement, RST solicited orders for Wilo products from various third-party customers.

Several clauses of the Agreement address the terms for placing orders, making payment for product, and the terms and conditions of sales, including: Section 5A of the Agreement, which provides that "[a]ll Product orders solicited or obtained by [RST] shall be issued by the customer to [Wilo] in [Wilo's] name…"; Section 6D provides that "[Wilo]" shall bear all expenses of invoicing and collection from the customers for sales made pursuant to orders solicited or obtained by [RST]…and [Wilo] shall bear all credit risks for such sales…"; and Section 7A provides that "[a]ll payments for [Wilo] products shall be

2

paid directly by the purchaser to [Wilo]…" (Doc. No. 1-1, Pl.'s Ex. A.) The Agreement outlines that orders came to Wilo directly from third-party customers. Additionally, RST entered into a Credit Application on March 15, 2010, and ordered parts directly from Wilo to sell themselves to third-parties. *Id.*

On December 20, 2011, Wilo invoked its right to terminate the Agreement within 30 days. As a result, the Agreement was terminated on January 20, 2012. RST continued to order goods from Wilo until approximately March 12, 2012. Wilo claims that, to date, RST owes and has failed to pay $61,037.49 for goods that it directly ordered, received, and accepted from them. Def.'s Answer p.5, ¶23.

RST contends that the invoices for which Wilo seeks payments were for Product orders for third-party customers, to which RST is not obligated to pay, since Wilo agreed to bear the credit risk for such sales. Therefore, RST argues, Wilo is estopped from collecting said payments. Def.'s Counterclaim p.8, ¶10. Additionally, RST argues that Wilo failed to credit them for payments already made, as well as for products returned. Lastly, RST contends that the invoices for which Wilo seeks payment include non-conforming or otherwise defective goods.

RST counterclaimed that Wilo's representatives stated that the company's circulator pumps were technologically competitive,

3

"green," and would be Americanized as necessary, and that suitable installation components would be available in a timely fashion. Def.'s Counterclaim pp.9-10. Additionally, Defendant claims that Wilo representatives repeatedly advised Defendant that the company would do whatever was needed for the American market. RST claims that, in reliance on such discussion, Defendant entered into both the Agreement and the later Credit Agreement, and performed its obligations under those Agreements, including the introduction of Wilo's product line to engineers, wholesalers and contractors, notwithstanding their longstanding relationships with competitors. RST claims to have utilized significant amounts of money and resources to make major efforts to increase Wilo's sales in its geographical area, all in reliance upon Wilo's representations.

In October 2011, Wilo announced that it would introduce a pump with an integral check valve, the American industry standard for manufacture of such an item, but almost concurrently, purported to terminate the parties' Agreement without cause. Def.'s Counterclaim pp. 12-13. RST argues that termination of the Agreement by Wilo on the eve of the introduction of a circulator pump with an integral check valve was contrary to the assurances Wilo had made to Defendant, and deprived Defendant of the ability to recover the approximately $90,000 it devoted to improving Wilo sales in 2011 alone.

4

Defendant argues that Wilo's actions violated its obligations to act in good faith under the Agreement, constituted an unfair or deceptive practice in the conduct of its business, and with knowledge of the substantial efforts Defendant made in reliance on those representations, Wilo violated Chapter 93A and the Delaware Act. Def.'s Counterclaim p.13.

Now, Wilo moves the Court to strike RST's counterclaim, arguing that Defendant has failed to establish that Wilo's purported damages are connected to conduct that is actionable under either Chapter 93A, or the Delaware Act.

## Discussion

First, the Court must address the lack of clarity regarding which Federal Rule Plaintiff filed its motion to strike under. Because Plaintiff's initial motion did not specify, much like Defendant's best guess, the Court presumed that the motion was filed pursuant to Section 12(f) of the Federal Rules of Civil Procedure. Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, Plaintiff clarifies within a footnote in its Reply that its motion to strike was brought pursuant to Rule 12(b)(6). Pl.'s Reply. p.1 n.1.

The most prevalent challenge to a counterclaim is under Rule 12(b)(6) for failure to state a claim upon which relief can

5

be granted. A Rule 12(b)(6) motion to dismiss does not test the merits of the claim, instead, it tests only the sufficiency of the complaint, or, in this case, the Counterclaim. *Triad Associates, Inc.* v. *Chicago Housing Authority,* 892 F.2d 583, 586 (7th Cir, 1989), *cert*, *denied,* 498 U.S. 845 (1990). A complaint or counterclaim "need only provide a 'short, and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis. *Tamayo* v. *Blagojevich,* 526 F.3d 1074, 1081, (7th Cir. 2008) *(citations omitted).*

A court must construe the complaint or counterclaim in the light most favorable to the claimant, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in the claimant's favor. Furthermore, the Rules mandate only notice pleadings. Fed. R. Civ. P. 8(a)(2). While a court is not obliged to accept as true mere conclusory allegations without any supporting facts, *see Tamari* v. *Bache & Co.,* 565 F.2d 1194, 1199 (7th Cir. 1977), a motion to dismiss will be granted only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" *Ledford* v. *Sullivan,* 105 F.3d 354,356 (7th Cir. 1997).

Herein, RST alleged specific facts, which, together with the reasonable inferences that can be drawn from them, may be

6

sufficient to state causes of action under either law cited. Again, the Court need only find that RST provided Wilo with fair notice of its claim and its basis, and need only dismiss the counterclaim if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. The Court will address each law in turn.

**I. Delaware Act**

In order to have standing to bring a cause of action under the Delaware Deceptive Trade Practices Act, the pleading party must seek, and must be entitled to receive, injunctive relief. "[O]ne may collect damages under the DTPA only in conjunction with injunctive relief." *Grand Ventures, Inc., v. Whaley*, 622 A.2d 655, 659 (Del. Super. 1992). Courts have dismissed claims under the Delaware Act where the pleading party either (i) was not seeking injunctive relief," *Lipson* v. *Anesthesia Services, P.A.,* 790 A.2d 1261, 1290 (Del. Super. 2001)(granting the defendant's' motion for summary judgment with regards to the plaintiff's claim under the Delaware Act where the plaintiff had declined to seek injunctive relief), or (ii) where seeking injunctive relief would be futile, *State ex rel. Brady* v. *Pettinaro Enterprises,* 870 A.2d 513, 537 (Del. Ch. 2005)(dismissing the Attorney General's claims under the Delaware Act where his claims for injunctive relief were "not viable").

7

Herein, RST does not seek injunctive relief, as there is no behavior on Wilo's part to enjoin at this point. Indeed, RST's counterclaim sets forth that all of its damages were incurred no later than 2011, and RST now only seeks money damages to compensate it for its purported losses. (Doc. No. 10, ¶38.) RST directs the Court's attention to other clauses of the Delaware Act, arguing that "Section 2531 (b) expressly provides for "reasonable attorneys' fees," and Section 2531 (c) provides for treble damages in certain circumstances, so it cannot be said that injunction is the sole relief available under Delaware §2531." Def.'s Counterclaim p5, ¶20. However, the Court is unconvinced that the necessity for injunctive relief is not paramount to relief under the Delaware Act. Accordingly, since no relief could be granted under any set of facts that could be proved consistent with the allegations and the Delaware Act terms, the court must grant Wilo's motion to strike RST's Counterclaim based on relief sought under the Delaware Act.

**II. Chapter 93A**

Wilo argues that RST's Chapter 93A argument fails as a matter of law because it does not include certain necessary facts. Wilo supports its argument with case law that RST argues the Court should not give much weight, if any, since many of the rulings were not issued in response to a motion to dismiss. The Court finds that the stage the case is in does not make the

8

holdings any less applicable, and that each case can be relied upon at the motion to dismiss stage, as well.

RST alleges that it invested money and resources in advertising and marketing Wilo's products based on Wilo's assurances that it could "'cover his back'" and that "'we're in this together,'" and that, as a result of Wilo terminating the Agreement, RST was not able to recover its investment. (Doc. No. 10, ¶¶33-38.) Defendant's allegations amount to seeking damages under a theory of equitable recoupment.

In order to qualify for equitable recoupment, RST must be able to prove (i) that it suffered a net loss and (ii) that it had an exclusive distributorship with Wilo. *Healthco Intern.* v. *A-dec, Inc.,* 1989 WL 104064 (D. Mass. 1989); *Zapatha* v. *Dairy Mart, Inc., 381* Mass. 284, 408 N.E.2d 1370 (Mass. 1980). RST's own allegations, however, establish that it cannot prove its entitlement for equitable recoupment under Chapter 93A, as RST stated how it increased sales by more than 200%; how the Agreement made clear that RST was not a distributor for Wilo; the relationship was non-exclusive and limited; and RST was authorized to represent other manufacturer's products. (Doc. No. 10, Ex. A, §§1A,9.)

Federal courts have made clear that, even at the pleadings stage, the pleading party must present sufficient allegations to make clear that the alleged conduct falls within the "penumbra"

9

of actionable conduct under Chapter 93A. Claims under this statue are dismissed pursuant to Rule 12(b)(6) where the allegations fail to specify conduct that rises "to the level of rascality required." *Declude, Inc. v. Perry,* 593 F.Supp.2d 290, 297 (D. Mass., 2008). Specifically, the pleading party must allege something that rises above the bar of general allegations of breach of contract or negligence. The Court finds RST's claim unable to rise above that bar. Accordingly, the Court must grant Wilo's motion to strike RST's Counterclaim based on relief sought under Chapter 93A.

RST has failed to state a cause of action under either the Delaware Act or Chapter 93A, and for that reason, the Court must strike and dismiss the Counterclaim under the Federal Rules.

<u>Conclusion</u>

For the reasons set forth above, Plaintiff's motion to strike [Dkt. #13] is granted.

Dated: December 13, 2013

**E N T E R E D:**

_____
MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT

10